### JAMES CROSSON v. MAGGIE CARR.

Submitted December 21, 1903—Decided February 23, 1904.

1. Where a testator in a devise of land had described the subject-matter thereof by the words, "the house and lot where I now reside," and the facts showed that early in his life he had bought a lot fifty feet wide fronting on a city street, and built a dwelling-house and other buildings on twenty-five feet thereof, leaving the other half of his lot vacant; that thirteen years later he bought thirty feet more land adjoining, and thereafter enclosed the whole as one lot, but had not built upon his adjacent land during forty years or more of his occupancy, except that in the last half year of his life a wood-house had been built upon thirteen feet of the adjacent land for the convenience of his household; and that there was evidence, though conflicting, that about the same time a fence was erected which, with the wood-house, formed an en-

closure of the thirteen feet, with the twenty-five feet upon which the house stood, leaving outside of this enclosure forty-two feet of the testator's land; the plaintiff claiming under this devise brought suit in ejectment to recover the thirteen-foot plot as embraced therein from the defendant, who claimed it under a residuary clause of the will; at the trial, the jury returned a verdict for the defendant. Upon review—*Held*, that a resort to extrinsic evidence in determining the location and extent of the subject-matter of the devise was proper; *held further*, that this question was one for the jury and not for the court.

2. Under the evidence adduced in the cause it was held, that a request to direct a verdict was properly refused, and further, that the verdict was not so clearly against the weight of evidence as to justify the interference of the court.

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices DIXON, HENDRICKSON and SWAYZE.

For the plaintiff, *George S. Silzer*.

For the defendant, *Freeman Woodbridge*.

The opinion of the court was delivered by

HENDRICKSON, J. The rule to show cause in this case brings before us for review a verdict for the defendant in an action of ejectment, tried at the Middlesex Circuit. The plaintiff sued to recover an undivided interest in a strip of land thirteen feet wide and one hundred feet deep, located on the westerly side of John street, in the city of New Brunswick, which was part of a larger tract whereof James Carr, Sr., lately died seized.

The plaintiff and the defendant both claim title under the will of the deceased. The plaintiff claims under the second item of the will, wherein the testator made a devise to his wife for life, and at her death to his son James, describing the subject-matter of the devise as "the house and lot where I now reside." By the next item he devised to the defendant, his daughter, all the rest and residue of his real estate, "consisting of lots or any other real estate."

The controversy arises over the question as to how much of the land of the testator contiguous to the dwelling-house, in which he resided, passed under this devise to the son of the testator.

The latter purchased a lot, which includes the *locus in quo,* in 1852, having a frontage on John street of fifty feet with a depth of one hundred feet. He erected a dwelling-house on the southerly side of the lot, as near the exterior line as possible, and, as the defendant claims, occupied therewith only twenty-five feet. The defendant's further contention is that the testator, by the method he pursued, in thus locating his house and other buildings thereon and by his acts and conduct thereafter, indicated his intention to limit his "house and lot," as the words are commonly understood, to the twenty-five feet, leaving the remaining twenty-five feet to be held by him as an additional building lot.

In 1867, fifteen years later, the testator bought thirty feet more of land fronting on John street and adjoining the first tract on its northerly side, and at the time of his death and for many years prior thereto the whole of the land was enclosed by a common fence. The plaintiff did not claim the whole of this land, having a frontage of eighty feet, but in addition to the twenty-five feet, on which the house was located, he claimed the thirteen feet embraced in the suit, on the ground that the testator had in his lifetime, as alleged, located a wood-shed for his own use thereon and enclosed it by a fence with the house and curtilage surrounding it.

This claim was made on the principle defined in *Smith* v. *Negbauer,* 13 *Vroom* 305, and *Inhabitants of Phillipsburgh* v. *Bruch's Executors,* 10 *Stew. Eq.* 482.

It was resisted by the defendant upon the ground already stated and the facts alleged in its support were in dispute.

Under such circumstances a resort was naturally had at the trial to extrinsic evidence as to the conditions and circumstances surrounding the testator at the time, in order to settle the doubts arising as to the true application of the devise to

its proper subject-matter. *Opdyke* v. *Stevens,* 4 *Dutcher* 83; *Griscom* v. *Evens,* 11 *Vroom* 402; *Smith* v. *Negbauer, supra.*

This sort of evidence was produced by both the parties with the result already stated. The plaintiff seeks to have the verdict set aside.

The only legal error suggested as the ground of this motion is the refusal of the trial judge to direct a verdict for the plaintiff.

We think it manifest that there was no error in this refusal. Upon the authority of the cases already cited, the questions raised in this cause were not for the court but for the jury. It is further contended in support of this motion that the verdict is against the weight of evidence. But is it? The will bore date on the day of the testator's death, which occurred February 9th, 1892. The plaintiff's evidence tended to show the presence of the wood-house and fence erected upon and enclosing the thirteen feet with the house at and before the death of the testator, and that the outside stairway to the second floor on the south side of the house, at the time of the trial, extended beyond the line of the twenty-five feet over on the thirteen-foot strip a distance of four and one-half inches, and the passageway along the stairway to the kitchen was entirely upon the strip in controversy.

The lot was sloping toward the street and a cut had been made in the embankment so as to have the plot occupied by the house on a level with the street.

It was also shown that the fence in the rear of the kitchen, which served as a retaining wall against the bank, extended, at the time of the trial, a foot and a half beyond the twenty-five-foot line. The defendant testified that she lived at home up to the time of her father's death; that thereafter she and her mother occupied the house and all the land in common until her mother's death, which occurred a short time before the suit began; that the wood-house was erected and paid for by herself, for her own convenience, to save her from going for wood and coal to the old wood-shed upon the rear of the twenty-five-foot lot; that it was erected in the fall of the last

year of her father's life; that he followed the water and was home but seldom; that her impression was that the wood-shed had not yet been used, the winter's coal having been deposited in the old wood-shed; that the fence referred to was not there at the date of her father's death; that it was erected after that as a temporary fence, of old palings, to keep the chickens from going upon the remainder of the lot where she had planted peach trees when a young girl.

The evidence of herself and her witnesses strongly tended to prove that when her father made the cut in the bank for the location of his house he stopped at the twenty-five-foot line, and that within that cut was confined the house, the side stairway and the passageway. It showed much nicety in the division of space for these purposes. The house had a frontage of twenty-two feet nine inches. The stairway was so narrow that there was just room for one person to pass up it. If a bucket was to be carried it must be held in front or behind the person carrying it. In the passageway a person would brush his shoulders as he walked. The evidence tended to show further, that since the death of the testator the retaining fence had been extended one foot and a half and that the stairway and passageway had both been widened.

The evidence is that the testator erected, and for a few years occupied, a stable upon the rear of the twenty-five-foot plot, which was afterwards converted into a chicken-house and wood-house; also that, leaving out of consideration the new wood-house, the testator never in his lifetime erected any building on the land outside of the house plot mentioned.

The defendant admitted that, in her father's lifetime, parts of the thirteen-foot plot and also of the land adjoining was cultivated by her and her mother. What the effect of such acts of occupancy and cultivation in the lifetime of the testator should be in determining the question in controversy was also for the jury. Whether he meant thereby to treat the whole as one curtilage or to simply derive a profit from the land adjacent to his homestead lot so long as it remained unoccupied was for the jury to decide.

Without referring further to the testimony except to say that it has all been carefully considered, we feel constrained to say that we are unable to reach the conclusion that the verdict is clearly against the weight of evidence.

The case was properly submitted to the jury by the learned trial judge and the result is that the rule to show cause must be discharged.